UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUZANNE WRIGHT,

              Plaintiff,                                Civil Action No.
                                                    05-CV-71797-DT

vs.

                                                  HON. BERNARD A. FRIEDMAN

LOWE'S HOME CENTERS, INC.,

              Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

**and**

**ORDER GRANTING PLAINTIFF'S MOTION TO**
**SUBSTITUTE BANKRUPTCY TRUSTEE AS PARTY PLAINTIFF**

This matter is presently before the court on defendant's motion for summary judgment and plaintiff's motion to add or substitute the bankruptcy trustee as party plaintiff. Pursuant to E.D. Mich. LR 7.1(e)(2), the court shall decide these motions without oral argument. Accordingly, the hearing scheduled for December 11, 2006, is canceled.

Plaintiff Suzanne Wright was employed by defendant in the paint department of its store in Southgate, Michigan, from August 2001 until she was discharged in April 2004. Plaintiff, who is a Jehovah's Witness, alleges that defendant discriminated against her on the basis of her religion by scheduling her to work during times when she wanted to attend church or church activities, and that defendant retaliated against her because she requested time off for this purpose and/or because she complained to management officials about her supervisor's failure to

accommodate her scheduling requests.  She asserts a claim under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., and seeks damages, costs, attorney fees, and reinstatement.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Once a properly supported summary judgment motion has been filed, the burden shifts to the party opposing the motion to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine dispute as to any material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Viewing the evidence "in the light most favorable to the opposing party," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party.  *See Anderson*, 477 U.S. at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989).  In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party."  *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990).

Defendant argues that plaintiff has failed to state a prima facie case because she has not alleged, and has no evidence to prove, that she was replaced by someone who is not a Jehovah's Witness or that defendant treats Jehovah's Witnesses less favorably than other employees.  This argument fails because in a case such as this, in which the discrimination at issue is based on the employer's alleged failure to accommodate a religious practice, plaintiff need not make such a

showing.  Rather, in a failure-to-accommodate case, plaintiff states a prima facie case by showing that "1) he holds a sincere religious belief that conflicts with an employment requirement; 2) he has informed the employer about the conflicts; and 3) he was discharged or disciplined for failing to comply with the conflicting employment requirement."  *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, (6th Cir. 2002).  *See also Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994).[1]

In the present case, defendant concedes that plaintiff has sincere religious beliefs which potentially conflict with employment requirements and that defendant was aware of the conflict.  Specifically, plaintiff must attend church services or meetings on Tuesdays and Thursdays from 7:00 p.m. to 9:30 p.m., and also on Sundays until 3:00 p.m.  Plaintiff disclosed this information on her employment application as well as during her pre-hire interview with the store manager. These elements of plaintiff's prima facie case are conceded.  Defendant does not contend that the requested accommodation would cause defendant undue hardship.

Rather, the dispute in this matter concerns the reasons for plaintiff's discharge.  This is not only an element of plaintiff's prima facie case, but also the ultimate issue.  While defendant argues that it discharged plaintiff for a legitimate non-discriminatory reason, plaintiff has produced evidence from which a  reasonable jury could conclude that her accommodation requests and/or her complaints to management regarding the failure to accommodate were a motivating factor in

---

[1]In its reply brief, defendant argues that this is not a failure-to-accommodate case because plaintiff admits "she was never forced to work in violation of her religious beliefs and was never disciplined for missing work for religious observation."  Dft's Reply at 1.  Nonetheless, the court believes this case belongs in the failure-to-accommodate category because, as noted below, plaintiff alleges she was discharged for repeatedly complaining about accommodation problems. Under such circumstances, clearly it is cases such as *Virts* and *Cooper* which articulate the applicable analytical framework.

defendant's decision to discharge her.  Plaintiff testified at her deposition that her immediate supervisor, Brian Kelly, repeatedly scheduled her to work during the above-referenced times. Sometimes plaintiff went over Kelly's head and succeeded in having her schedule changed.  Other times these efforts were not successful.  On other occasions Kelly scheduled plaintiff to close one night and open the next morning, including New Year's Eve and New Year's Day, with the explanation that such scheduling was the result of plaintiff's scheduling "restrictions."  Plaintiff also testified that Kelly's treatment of her worsened when she complained to higher level management about the scheduling problems.  Kelly allegedly assigned plaintiff unusually difficult tasks and forbade other employees to assist her.

Defendant's stated reason for discharging plaintiff is that she violated defendant's ethics policy which prohibits employees from, among other things, "[e]ngaging in personal, financial, or business relationships with suppliers or customers."  Dft's Ex. 9.  According to Kelly, on March 27, 2004, plaintiff "had just completed the how to clinic in aisle 4.  She was excited and said she had 7 people participate.  Then she stated she 'got a job out of it.'"  Dft's Ex. 12.  Kelly viewed this is a violation of the prohibition against "outside employment + solicitation," *id.*, and reported the incident.  The store manager, Jim Geers, interviewed plaintiff, verified that she had made the statement, and discharged her on this basis after consulting with the area human resources manager.  *See* Geers dep, pp. 31-32, 37; dft's Ex. 18.

A reasonable jury might reject this explanation because Geers did not ask plaintiff what happened at the how-to clinic or whether she actually solicited or obtained work from a customer.  Geers testified that the ethics policy prohibits employees from "soliciting work or receiving work while you were on the clock doing side work."  Geers dep., p. 24.  He also testified

4

that he understood, from Kelly's statement and the interview with plaintiff, that "a customer came up to her afterwards, asked if she did painting and would she do some work for them." *Id.* at 31-32. A jury could find that Geers had no basis for believing that plaintiff had solicited work from the customer. Geers also acknowledged that he never asked plaintiff is she had actually received any work. *See id.* at 33, 93. In fact, plaintiff has testified that she never received any business from a customer, and that the particular customer at the how-to clinic never called her. *See* pltf's dep., pp. 50, 63. Plaintiff also testified that her meeting with Geers lasted just one or two minutes, and that he was not interested in listening to her explanation regarding her "I got a job" comment. *Id.* at 53, 62. During this meeting, plaintiff says that she also asked Geers for permission to take off three days in June 2004 (approximately three months hence) in order to attend a religious convention, and that he denied this request although he had granted such permission previously during her pre-hire interview. Pltf's dep., pp. 62-63.

Defendant's explanation for discharging plaintiff is further weakened by the fact that defendant's human resources manager, Mary Frankland, testified that an employee may post his/her business card on a bulletin board and tell customers, who inquire if the employee is available for hire, that "I have posted something on the board, you should go over there." Frankland dep., pp. 36-38. According to plaintiff's testimony, she did nothing more than this at the how-to clinic.

In addition to rejecting defendant's explanation, a reasonable jury might conclude that defendant was actually motivated, in whole or in part, by plaintiff's complaints regarding her supervisor's failure to accommodate her requests for time off. While there is no "smoking gun" in this case, there is evidence suggesting that Kelly was annoyed with plaintiff's complaints. Plaintiff testified that Kelly once "introduced me to a new vendor as the thorn in his side." Pltf's dep., p. 116.

5

When Kelly heard plaintiff make the comment at the how-to clinic, another employee heard Kelly respond by saying, "Good."  Pltf's Ex. 15.  Kelly did not ask plaintiff what she meant by this comment, but he immediately reported the comment to the store's human resources manager because he wanted plaintiff to be disciplined.  *See* Kelly dep., pp. 49-51.  Kelly also indicated that he was not "comfortable" with complaints plaintiff had made about him to this human resources manager.

The material facts are sufficiently disputed such that the matter must be resolved by a jury.  If the jury finds liability, it will be for the jury to assess damages.  The court  will not invade the jury's province by cutting off plaintiff's damages on the theory that she falsified her employment application.  Defendant may submit evidence on this issue to the jury and request an appropriate instruction.

Nor will the court limit plaintiff's damages to the amount ($20,000) listed in her bankruptcy petition as the value of the case.  This was merely plaintiff's estimate of the case's value at that time.  Presumably the potential value of the case has grown with time, as plaintiff's lost wages, interest, costs and attorney fees continue to accrue.  Plaintiff is not limited by principles of judicial estoppel to the estimated  value of the case at some time in the past.

Finally, the court shall grant plaintiff's motion to substitute the bankruptcy trustee as the party plaintiff.  Plaintiff commenced this action in May 2005, and she filed for bankruptcy in October 2005.  Her cause of action is property of the bankruptcy estate, and therefore it is the bankruptcy trustee, not plaintiff herself, who must prosecute the matter.  *See Bauer v. Commerce*

*Union Bank*, 859 F.2d 438, 441-42 (6th Cir. 1988); Fed. R. Civ. P. 25(c).  Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion to substitute the bankruptcy trustee as the party plaintiff is granted.

_____s/Bernard A. Friedman_____

Dated: December 12, 2006          BERNARD A. FRIEDMAN
       Detroit, Michigan          CHIEF UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.

_____/s/ Patricia Foster Hommel_____
          Patricia Foster Hommel
       Secretary to Chief Judge Friedman